```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        EASTERN DIVISION
```
_____

GRADY DEWAYNE THOMAS,

       Plaintiff,

vs.                                     No. 07-1117-BRE/egb

GEORGE LITTLE, *et al.*,

       Defendants.

_____

```
        ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                       (DOCKET ENTRY 29)
```
_____

     On June 6, 2007, Plaintiff, Grady DeWayne Thomas, Tennessee Department of Correction ("TDOC") prisoner number 282252 who is incarcerated at the Northwest Correctional Complex ("NWCX"), Site 1, in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging TDOC Commissioner George Little, Assistant Commissioner Roland Colson, NWCX Warden Tommy Mills, Deputy Warden Brenda Jones, and Associate Warden Andy Haynes ("Defendants") were violating his rights under the Free Exercise Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"). The matter is before the Court on Defendant's motion for summary judgment to which Plaintiff has responded.

Background

Thomas alleges that he is an observing Muslim who adheres to the daily practice of five prayers during which purification with prayer oil is required. At the time Plaintiff filed his complaint, he claimed that he was allowed to purchase religious prayer oil from the Dawah Book Shop, but was required to store it in the prison property room. He asserted in the complaint that NWCX allowed Muslim inmates to practice with prayer oil once a week on Friday mornings in the chapel. Each participant was issued a small amount of prayer oil from the property room. Thomas stated that the oil was issued to all participants in the service on Friday morning, regardless of which inmate purchased the oil. He further alleged that there was never enough prayer oil for all participants and any attempt by an inmate to individually possess prayer oil resulted in a disciplinary charge for possession of contraband.

Plaintiff maintains that Defendants have no compelling penological interest in prohibiting him from keeping the oil in his cell because the prayer oil is nonflammable, nontoxic, and nonalcoholic. Thomas seeks declaratory and injunctive relief to allow him to posses certain types of prayer oil without fear of disciplinary charges. His previous request for monetary damages has been withdrawn.[1]

---

[1] In the response to Defendants' motion for summary judgment, Thomas states that he is no longer seeking monetary damages. Plaintiff's complaint contained a claim for a violation of his due process rights arising from an officer's confiscation of prayer oil without either returning the oil to him or to the property room. The Court construes that allegation, as well as the contentions that Plaintiff was required to share his own prayer oil with other group prayer

Since Plaintiff filed his complaint, TDOC Policy 118.01 was amended to provide that:

> Inmates may use non-flammable, non-alcoholic sacramental oil in modest amounts for religious purposes. Inmates may purchase three ounces of such oil from vendors approved by the TDOC and in accordance with Policy #507.02; provided, however, sacramental oil for religious use shall not count against the maximum number of packages that an inmate may receive and the existence of a disciplinary package restriction shall not prohibit the receipt of sacramental oil for religious use. Inmates may keep such oil in their cells in an amount not to exceed three ounces. Any use of such oil for non-religious purposes shall result in a disciplinary action.

TDOC Policy 118.01, Section VI.(C)(7), effective March 15, 2008. Upon the change in policy, NWCX inmates were allowed to purchase prayer oil from Union Supply and keep it in their cells for religious purposes. Although, Plaintiff alleges that he is not permitted to order oil from the Dawah Book Shop or any vendor other than Union Supply. He claims that Union Supply is sometimes out of the prayer oil and, because inmates are limited in the number of orders that may be placed, this inconsistency in the supply may result in Muslim inmates being without prayer oil for periods of time. However, he has not indicated that he, personally, has been deprived access to prayer oil as a result of Union Supply's insufficient stock. Thomas also contends that Union Supply fails

---

participants without recompense as claims of property deprivation, which are not cognizable under 42 U.S.C. § 1983. Defendants correctly cited <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981), in their motion and requested dismissal of these claims. However, because Plaintiff has now abandoned these causes of action and is no longer seeking monetary damages, those allegations and those particular grounds of the motion will not be addressed further.

to provide sufficient information about the ingredients that make up its prayer oil.

On January 21, 2009, Defendants filed a motion for summary judgment, accompanied by a memorandum, a copy of Thomas' deposition, and the affidavit of Chaplain Larry Glenn, asserting that their actions do not violate the First Amendment, RLUIPA, or the Equal Protection Clause and that even if their actions do rise to the level of a constitutional or RLUIPA violation, they are entitled to qualified immunity. On April 6, 2009, Thomas responded to the motion for summary judgment with exhibits, which include Defendants' answers to Plaintiff's requests for admissions and interrogatories, copies of disciplinary reports, and declarations of Inmates Abdul Latif Mubashir and Adam A. Al-Amin.

## Standard for Summary Judgment

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," id. at 323, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party is unable to make such a showing, summary judgment is appropriate.

Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).

Pursuant to Rule 56(e), a "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(citations omitted). A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52.

<u>First Amendment and RLUIPA</u>

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The First Amendment is applicable to the States by virtue of its incorporation by the Fourteenth Amendment. <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940). Prisoners have a First Amendment right to practice their religion. <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984). This right is not unlimited, however. All that is required under this Amendment is that prisoners be provided "reasonable opportunities" to practice their religion. <u>Id.</u> This rule permits prison regulations to restrict an inmate's First Amendment rights to a degree.

5

> [A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

Pell v. Procunier, 417 U.S. 817, 822 (1974).

When a prison regulation substantially infringes an inmate's First Amendment religious practices, "the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). As the United States Supreme Court has noted,

> maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

Bell v. Wolfish, 441 U.S. 520, 546-47 (1979) (footnote omitted) (citations omitted) (quoting Pell v. Procunier, 417 U.S. 817, 823 (1974)). Thus, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policy and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id.

at 547; see also Overton v. Bazzetta, 539 U.S. 126, 132 (2003)("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

The RLUIPA, which expands the First Amendment protections accorded prisoners with respect to their religious beliefs,[2] specifically provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ..., unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc-1(a) (emphasis added). If a substantial burden on religion is found, a less deferential standard is applied for an RLUIPA claim (the least restrictive means of furthering a compelling governmental interest) than for a First Amendment/ §

---

[2] Defendants rely on the pre-RLUIPA decision of the Sixth Circuit Court of Appeals, in Mustafaa v. Dutton, 958 F.2d 372, 1992 WL 51473 (6th Cir. 1992), which held constitutionally valid a regulation prohibiting possession of prayer oils at Riverbend Maximum Security Institution ("RMSI") because: the oil was "sacramental or ceremonial material;" any material coming into the prison for receipt by inmates was subject to search (and search of liquid material was difficult and time consuming); and inmates were prohibited from possessing flammable, caustic, or toxic products. The Sixth Circuit determined that the policy was reasonably related to legitimate security concerns and did not completely forbid the use of prayer oils. However, that particular RMSI policy is not before the Court. Furthermore, the case was decided before the enactment of RLUIPA; the legal landscape has now changed and a new TDOC policy exists which allows possession of prayer oil.

1983 claim (reasonably related to legitimate penological interests).[3] See Cutter v. Wilkinson, 544 U.S. 709 (2005). RLUIPA does not, however, require a prison to accommodate a religious practice that jeopardizes institutional security. Id. at 724 ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety.").

Under RLUIPA, the initial burden of showing a substantial burden on a religious practice lies with the plaintiff. See 42 U.S.C. § 2000cc-2(b) (providing that "the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion"). The burden then shifts to the government to demonstrate that the compelling interest test is satisfied. Id. The Sixth Circuit has not directly defined the term "substantial burden," as it is used within RLUIPA, in a published opinion. Although, one panel of the Sixth Circuit, in an unpublished opinion, has stated that the "term 'substantial burden' as used in this [RLUIPA] is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden [on] religious exercise." Living Water Church of God v. Charter Twp. Meridian, 258 Fed. App'x 729, 733-34 (6th Cir. 2007) (quoting 146 CONG. REC.

---

[3] The Court determines that any distinct First Amendment implications of Plaintiff's claims are subsumed by the analysis of those claims under RLUIPA.

S7774-01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy)).[4] That case involved land use restrictions placed upon a church that had undertaken a construction project. The Living Water Court indicated that a plaintiff faces a high hurdle when attempting to show a substantial burden on a religious practice. Id. at 734. It observed that,

> while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs.

Id. (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), Sherbert v. Verner, 374 U.S. 398, 404 (1963), and citing Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 449 (1988), Braunfeld v. Brown, 366 U.S. 599, 605-06 (1961)). The Living Water Court found that a "bright line test"

---

[4]The Living Water Court noted that "while the statute does not define that term, the legislative history directs us to the Supreme Court's 'Free Exercise' jurisprudence to determine the term's scope." 258 Fed. App'x at 741. That court also noted that, under the facts presented, it was
> reluctant to interpret the "substantial burden" of this provision of RLUIPA as including lesser burdens than those encompassed by the Supreme Court's "Free Exercise" jurisprudence, inasmuch as the statute would then effectively exempt religious institutions from a great many land use regulations to which non-religious institutions are subject, arguably rendering the provision vulnerable to attack under the Court's "Establishment Clause" jurisprudence.

Id. at 741 n.6.

was unhelpful, and instead considered a version of the following question:

> [T]hough the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious [practitioner] to violate [his] religious beliefs or effectively bar a religious [practitioner] from [exercising his] religion?

Id. at 737; see also id. at 742 (Moore, J., concurring) (suggesting that the standard should be whether "regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable") (quoting Civil Liberties for Urban Believers (CLUB) v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003)). The focus should be on the "actual burden" placed on the plaintiff's religious exercise. Id. This Court agrees with the analysis used in Living Water.

In an attempt to establish his prima facie case and shift the burden pursuant to § 2000cc-2(b), the Plaintiff contends that the Defendants have placed a substantial burden on his religious exercise because they will only allow him to purchase prayer oil from Union Supply. It is undisputed that, pursuant to TDOC Policy 118.01, Section VI.(C)(7), he is permitted to keep a small amount of prayer oil in his cell to use for his daily prayers.[5] Although

---

[5] In Charles v. Verhagen, 220 F. Supp. 2d 937, 948 (W.D. Wisc. 2002), a federal district court found that failure to supply Muslim inmates with prayer oil might substantially burden their religious exercise. In that case, however, prayer oils were completely unavailable, unlike in this case where Thomas has access to prayer oils but complains that his supply source is restricted to a single vendor. In that respect, the Plaintiff's case is factually

the Plaintiff asserts that having the ability to purchase oils from alternative sources, such as Dawah Book Shop, would be preferable because

> Union Supply has demonstrated that it is not competent enough to supply sufficient amounts of oil to the TDOC inmate population on a consistent basis. When Union Supply is out of stock of oil, inmates at NWCS are made to wait 3 months before they are allowed to attempt to order and possess oil. (Inmate packages (oil) can only be ordered every 3 months.) This means that prisoners are forced to go without oil for no fault of their own.

(D.E. 43, Pl.'s affid., at ¶ 46.) In support of this allegation, the Plaintiff attached a grievance form filed by a fellow inmate, Archie Montague, who complained that an order for prayer oil was not filled by Union Supply. Thomas has not shown, however, that he personally was ever deprived of prayer oil due to insufficient stock. In fact, the Plaintiff has not presented any evidence that the Defendants' limitation as to suppliers has actually interfered with his ability to conduct his daily ritual since adoption of the new policy. The Court finds that his hypothetical concern is insufficient to establish that "substantial pressure . . . to modify his behavior and to violate his beliefs." Living Water, 258 Fed. App'x at 734 (quoting Thomas, 450 U.S. at 717-18); see also Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (noting that "a 'substantial burden' must place more than an inconvenience on religious exercise"); Episcopal Student Found, v. City of Ann Arbor, 341 F. Supp. 2d 691, 702 (E.D. Mich. 2004) (noting that "courts have been far more reluctant

---

distinguishable from Charles.

11

to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs"). The Plaintiff also complains that Union Supply does not provide certain information about the ingredients of its oils. However, he does not allege that this prayer oil is somehow unfit for his religious ritual. In fact, the Plaintiff indicates in his brief that the prayer oil he previously used "is identical to the oil which the defendants now provide through Union Supply." (D.E. 43, Pl.'s Brief, at 12.)

In reviewing the evidence in a light most favorable to the Plaintiff, the Court does not find that the Defendants have placed a substantial burden on his religious exercise.[6] The Plaintiff commits a substantial portion of his brief arguing that the Defendants have "failed to 'demonstrate that they have considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'"[7] (D.E. 43, Pl.'s Brief, at 12

---

[6] The Court concludes that, regardless of whether it applies the standard adopted by the majority in Living Water or the standard advocated by Judge Karen Nelson Moore in her concurrence, the Plaintiff has not shown a substantial burden.

[7] Relying on an affidavit from Chaplain Larry Glenn, the Defendants argue that its practice is the least restrictive means of allowing the Plaintiff's religious practice and ensuring safety and security. Although the Defendants fail to relate the education, training, experience, or institutional background of Chaplain Glenn, they rely on his affidavit to support the following allegations: that the NWCX fire safety officer identified the prayer oil from Dawah Book Shop as hazardous because it was highly flammable: its flashpoint (191) is too low and its flammability code number (2) too high; if the oil caught on fire, it would be an accelerated fire, endangering everyone. As the Plaintiff points

(citing § 2000cc *et seq.*).) Even assuming this to be true, however, the Defendants are not required to show that they have used the least restrictive measures unless the Plaintiff establishes that the challenged practice imposes a "substantial burden" on his religious exercise. See <u>Living Water</u>, 258 Fed. App'x at 742 ("Because we find no substantial burden, we do not reach the district court's conclusions with regard to whether the [defendant's] action was in furtherance of a compelling governmental interest or was the least restrictive means of furthering that interest."). Because Thomas has not presented sufficient evidence to make this threshold showing, the burden does not shift to the Defendants. 42 U.S.C. § 2000cc-2(b). Thus, the Defendants' motion for summary judgment should be granted with regard to the First Amendment and RLUIPA claims.[8]

---

out, however, the Defendants fail to demonstrate that Chaplain Glenn has been trained or educated in issues of institutional security. <u>See</u> Fed. R. Civ. P. 56(e) (stating that affidavits supporting a motion for summary judgment must show that the affiant is competent to testify on the matters contained in the affidavit). Although, because the Plaintiff has not established his prima facie case by showing a substantial burden on his religious exercise, the resolution of the "compelling governmental interest" issue is not determinative of his claim, which means that disputed facts relevant to this issue are immaterial and do not preclude summary judgment. <u>Living Water</u>, 258 Fed. App'x at 742.

[8] For the same reason, the Defendants may benefit from the doctrine of qualified immunity. Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" <u>Phillips v. Roane County</u>, 534 F.3d 531, 538-39 (6th Cir. 2008) (citing <u>Silberstein v. City of Dayton</u>, 440 F.3d 306, 311 (6th Cir. 2006); <u>cf.</u> <u>Pearson v. Callahan</u>, 129 S. Ct. 808 (2009)(holding that the

## Equal Protection

Defendants contend that Thomas fails to state a claim of violation of the Equal Protection Clause of the Fourteenth Amendment because prisoners are not members of a protected class and his status as a Muslim inmate treated differently from other Muslim inmates does not show religious discrimination. The Court has reviewed Thomas' complaint, which only characterized the deprivation of his property as a claim of violation of due process under the Fourteenth Amendment. As noted in footnote one, supra, that claim was not actionable and was abandoned by Plaintiff in the response to Defendants' motion.

Thomas provides declarations demonstrating that Muslim inmates at South Central Correctional, Wayne County Boot Camp, NWCX-Site 3-Neil Rone Unit, and Hardeman County Correctional were provided with prayer oil in the years 2004, 2005, and 2006, while Plaintiff and other NWCX inmates received disciplinary write-ups for possession of prayer oil in their cells. He also alleges that Defendants Mills and Jones sanctioned confiscation of prayer oil and the issuance of disciplinary write-ups despite knowing that other institutions permitted inmates to possess prayer oil and that Dawah Book Shop oil posed no credible threat. The Court does not view these allegations as an attempt to state a separate claim of an

---

two-part test is no longer considered mandatory-thereby freeing district courts from rigidly, and potentially wastefully applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework). Because the Plaintiff has not shown that a constitutional violation has occurred, the Defendants are entitled to qualified immunity.

Equal Protection violation, but as additional evidence of the impermissible burden on the practice of Plaintiff's religion at NWCX. Because the Court does not construe the complaint as alleging a distinct Equal Protection violation, the Court grants the aspect of the Defendants' motion for summary judgment that asserts the Plaintiff is not entitled to relieve on this ground.

## CONCLUSION

For the reasons articulated herein, the Court GRANTS the Defendants' motion for summary judgment.

IT IS SO ORDERED this 6th day of July, 2009.

                              s/ J. DANIEL BREEN
                              UNITED STATES DISTRICT JUDGE